# EXHIBIT A

# SETTLEMENT AGREEMENT AND GENERAL RELEASE

This Settlement Agreement and General Release ("Agreement") is entered into by and between Valencia McAfee ( "McAfee") and Wings of Love Services, LLC ("WOL") and Janon White (collectively "Company").

WHEREAS, McAfee was previously was employed by WOL; and

WHEREAS, McAfee resigned her employment on February 23, 2017 with an effective date of March 9, 2017; and

WHEREAS McAfee filed a lawsuit in the United States District Court for the Southern District of Ohio, Case No. 3:17-cv-00072, alleging wage and hour violations;

WHEREAS, McAfee and the Company now desire to reach a complete and final settlement of all matters relating to McAfee's employment with WOL and her resignation therefrom;

NOW, THEREFORE, in consideration of the mutual promises and valuable consideration described below, the parties agree as follows:

1. As used in this Settlement Agreement and General Release, these words shall have the following meanings:

    a. RELEASEES means Janon White and Wings of Love Services, LLC and WOL's owners, predecessors, successors, assigns, agents, directors, officers, employees, representatives, attorneys, insurers and parents, divisions, subsidiaries, and affiliates (and agents, directors, officers, employees, representatives, and attorneys of such divisions, subsidiaries, and affiliates), and all persons acting by, through, under, or in concert with any of them.

    b. CLAIM or CLAIMS means any and all complaints, lawsuits (including Case No. 3:17-cv-00072), claims, liabilities, obligations, promises, agreements, grievances, controversies, damages, actions, causes of action, rights, demands, losses, debts, and expenses (including court costs and attorney's fees actually incurred).

2. Contingent on Approval of this Agreement by the Federal District Court for the Southern District of Ohio, the Company shall pay McAfee and her counsel a total sum of Eight Thousand Dollars and Zero Cents ($8,000.00), less legally required deductions, in two (2) installments as described below:

    a. Initial Installment: The Company shall issue for the Initial Installment three (3) checks in the gross amount of Seven Thousand Dollars and Zero Cents ($7,000.00) as follows:

        1. One check made payable to "Valencia McAfee" in the amount of One Thousand Five Hundred Fifty Dollars and Zero Cents ($1,550.00), less

Page 1 of 6

McAfee's Initials: VM

      legally required deductions, representing alleged lost wages, for which an IRS Form W-2 shall issue.

2. One check payable to "Valencia McAfee" in the amount of One Thousand Five Hundred Fifty Dollars and Zero Cents ($1,550.00), without deductions for tax withholdings or any other deductions, shall be provided to McAfee as compensation for alleged liquidated and/or compensatory damages claimed in the Lawsuit. An IRS Form 1099-MISC shall be issued to McAfee and the relevant taxing authorities in relation to such payment.

3. One check payable to "Contreras Law, LLC" in the amount of Three Thousand Nine Hundred Dollars and Zero Cents ($3,900.00) without deductions for tax withholdings or any other deductions, for attorneys' fees and costs pursuant to 29 U.S.C. § 216(b).

The above three (3) checks shall collectively be referred to as the "Initial Installment."

Initial Installment shall be paid within the later date of: (a) fourteen (14) days after receipt of this Agreement fully executed by McAfee and the production of W-9s by McAfee and her attorneys and the expiration of the revocation described in Paragraph 6 below; or, (b) five (5) days after the approval of the Fair Labor Standards Act portion of this settlement agreement by the Federal District Court for the Southern District of Ohio; and

b. Second Installment: In addition to and within twenty-one (21) days of payment of the Initial Installment, the Company shall also issue three (3) checks as follows:

1. One check made payable to "Valencia McAfee" in the amount of Two Hundred Fifty Dollars and Zero Cents ($250.00), less legally required deductions, representing alleged lost wages, for which an IRS Form W-2 shall issue.

2. One check payable to "Valencia McAfee" in the amount of Two Hundred Fifty Dollars and Zero Cents ($250.00), without deductions for tax withholdings or any other deductions, shall be provided to McAfee as compensation for alleged liquidated and/or compensatory damages claimed in the Lawsuit. An IRS Form 1099-MISC shall be issued to McAfee and the relevant taxing authorities in relation to such payment.

3. One check payable to "Contreras Law, LLC" in the amount of Five Hundred Dollars and Zero Cents ($500.00) without deductions for tax withholdings or any other deductions, for attorneys' fees and costs pursuant to 29 U.S.C. § 216(b).

McAfee's Initials: ѴМ

The immediately above three (3) checks shall collectively be referred to as the "Second Installment." The Second Installment shall be paid within twenty-one (21) days of the Initial Installment.

McAfee agrees to indemnify and hold RELEASEES harmless for any tax liability, together with any interest or penalties assessed thereon, which McAfee and/or RELEASEES may be assessed by the United States Internal Revenue Service, or any state or local department of taxation, arising from the payment made to McAfee pursuant to this Agreement, with the exception of WOL's portion of any applicable withholding, for which WOL shall be responsible.

3.      Each party shall bear all of the fees, costs and expenses incurred by her or its own attorneys or advisors in connection with this Settlement Agreement and the settlement it represents, except as otherwise provided herein.

4.      In exchange for her receipt of the above-referenced payments, and as a material inducement to RELEASEES to enter into this Agreement, as against RELEASEES, McAfee does hereby irrevocably and unconditionally release, discharge, compromise and settle any and all CLAIMS, demands, rights of action or obligation (including all attorneys' fees and costs actually incurred), matured or unmatured, of whatever nature and whether or not presently known that exist as of the execution date of this Agreement and any other CLAIMS arising out of or relating to McAfee's employment with any of the RELEASEES and/or her separation therefrom, under any federal, state or local law, common law, or statute, including, but not limited to, CLAIMS arising under the Fair Labor Standards Act, Ohio Wage and Hour Law, Title VII, the Ohio Human Rights Act, Ohio common law, or otherwise.

5.      McAfee acknowledges and agrees that this Agreement represents a settlement payment only, and should not be understood as constituting, an acknowledgment, evidence, or an admission of any liability or violation of any law or statute, the common law, or any agreement which exists or which allegedly may exist by and between McAfee and the Company. The Company denies and disclaims any liability to McAfee and by entering into this Agreement intends merely to avoid further litigation.

6.      Exclusively as this Agreement pertains to McAfee's release of CLAIMS under the Age Discrimination in Employment Act ("ADEA"), McAfee, pursuant to and in compliance with the Older Workers Benefit Protection Act: (i) is advised to consult with an attorney prior to executing this Agreement; (ii) is afforded a period of twenty-one (21) calendar days to consider this Agreement; and (iii) may revoke this Agreement during the seven (7) calendar days following its execution. To the extent McAfee executes this Agreement prior to the expiration of the twenty-one (21) calendar day period specified in (ii) above, McAfee acknowledges and agrees that she was afforded the opportunity to have a period of at least twenty-one (21) calendar days to consider it before executing it and that her execution of this Agreement prior to the expiration of said period was her free and voluntary act. McAfee also agrees that this Agreement is written in a manner that enables her to fully understand its content and meaning.

This Agreement as it pertains to a release of CLAIMS under the ADEA shall become effective and enforceable seven (7) calendar days after its execution. All other provisions of this Agreement or parts thereof shall become effective and enforceable upon execution; provided,

Page 3 of 6                                          McAfee's Initials: ___

however, that if McAfee revokes this Agreement as provided in (iii) above, RELEASEES may revoke this Agreement in its entirety during the seven (7) calendar day period following her revocation. Written notice of any revocation must be delivered to Janon White.

6. McAfee expressly acknowledges and agrees that as of the date that she signs the Agreement, she has not filed any Claims or administrative charges against any of the RELEASEES.

7. McAfee agrees that the existence and terms of this Agreement, as well as all discussions concerning this Agreement, are confidential. Accordingly, she shall not disclose the Agreement's existence or its terms or any related discussions to any other person or entity, except that she may disclose the amount to her attorney, spouse, financial advisor and as otherwise required and compelled by law. She shall instruct those individuals that the information is confidential and shall not be disclosed to any other person or entity. If anyone asks McAfee about the status or resolution of any differences with the Company, she shall respond only by stating that she and WOL have resolved all disputes.

Notwithstanding the foregoing, this Confidentiality provision shall not be breached in the event McAfee discloses the Company's information to the U.S. Securities and Exchange Commission, to the extent necessary to report suspected or actual violations of U.S. securities laws, or where McAfee's disclosure of the Company's information is protected under the whistleblower provisions of any applicable law or regulation. McAfee also understands that she is not required to inform the Company, in advance or otherwise, that such disclosure(s) has been made. McAfee is further advised that if she discloses the Company's information that constitutes a trade secret to which the Defend Trade Secrets Act (18 USC Section 1833(b)) applies, then she will not be held criminally or civilly liable under any federal or state trade secret law, or considered to be in violation of the Confidentiality provision of this Agreement if her disclosure is made solely for the purpose of reporting or investigating a suspected violation of law and in confidence to a federal, state, or local government official, whether directly or indirectly; or to an attorney; or where her disclosure is made in a complaint or other document filed in a lawsuit or other proceeding against the Company, and such filing is made under seal.

8. McAfee agrees not to apply for and renounces and forever waives any and all reinstatement or employment, whether temporary or permanent, part-time or full time, in any capacity whatsoever, with WOL at any of its current or future facilities or with any entity or organization which is or in the future becomes related to WOL. McAfee agrees that she shall not be rehired by WOL and if she is rehired may be terminated immediately based on this Agreement.

9. Other Representations: In addition to McAfee's other representations in this Agreement, McAfee has made the following representations to the Company, on which it acknowledges it also has relied in entering into this Agreement with her: (a) other than the CLAIMS made in Case No. 3:17-cv-00072, McAfee has not suffered any discrimination on account of her age, sex, race, national origin, marital status, sexual orientation, or any other protected status, and none of these ever has been an adverse factor used against McAfee by any RELEASEE(S); (b) other than the CLAIMS made in Case No. 3:17-cv-00072, McAfee has not suffered any job-related wrongs or injuries for which she might receive a workers' compensation award in the future; (c) other than the CLAIMS made in Case No. 3:17-cv-00072, McAfee has no knowledge of any wrongdoing by any RELEASEE(S) that would subject it or them to any harm, civil or criminal; and (d) McAfee has

provided no information, oral or in writing, to anyone - individual, corporation or any other organization, private, public or governmental - that involves any wrongdoing, civil or criminal, by any RELEASEE(S).

10. This Agreement is binding upon McAfee and her heirs, administrators, representatives, executors, and assigns and shall inure to the benefit of WOL and to its heirs, administrators, representatives, executors, successors, and assigns.

11. This Agreement sets forth the entire agreement by and between McAfee and the Company and supersedes any and all prior agreements and understandings, whether written or oral, between them. This Agreement shall not be modified except by written agreement duly executed by or on behalf of each of the parties hereto. This Agreement shall be governed by and construed in accordance with the law of the State of Ohio. If any part of this Agreement shall be deemed invalid or unenforceable, all remaining parts shall remain binding and in full force and effect.

12. The failure of McAfee or the Company to insist upon strict adherence to any term of this Agreement on any occasion shall not be considered a waiver thereof or deprive that party of the right thereafter to insist upon strict adherence to that term or any other term of this Agreement.

13. McAfee acknowledges that she is fully able and competent to enter into this Agreement, that she has read this Agreement in its entirety, that she had an opportunity to review it, and that her agreement to all of its provisions is made freely, voluntarily, and with full and complete knowledge and understanding of its contents. McAfee also acknowledges and agrees that, in signing this Agreement, she has not relied upon any representations made by the Company with regard to the subject matter, basis, or tax consequences — including the character or treatment of the settlement payment hereunder, or effect of this Agreement or otherwise, other than the obligations of the parties set forth in this Agreement.

14. Neutral Employment Reference: The Company agrees that, in response to any inquiries by potential employers of McAfee, the Company will provide a neutral employment reference consisting only of McAfee's job position(s) held with the Company, hiring date, and employment termination date.

_____  
VALENCIA MCAFEE  
Date: 8/30/17

_____  
JANON WHITE  
Date: 9-1-17

WINGS OF LOVE SERVICES, LLC  
By: _____

Page 5 of 6

McAfee's Initials: VM

Title: Owner
Date: 9-1-17

11620512v1

McAfee's Initials: VM